**UNITED STATES OF AMERICA, Plaintiff,**

**v.**

**JENNIFER LYNCH, ALLAN PETERSEN
& MELVIN MARVIN THOMAS, Defendants**

Crim. No. 95-73

District Court of the Virgin Islands

Div. of St. Thomas

December 1, 1995

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the court on the motion of defendant Melvin Marvin Thomas to dismiss count IV of the indictment as well as his motion to suppress use by the government in its case-in-chief of 1) telephone numbers retrieved from Thomas' pager device, and 2) defendant's refusal to cooperate with law enforcement officers by making a telephone call to co-defendant Alan Peterson. A hearing was held on September 14, 1995. For the following reasons, defendant's motions are denied.

## I. Factual and Procedural Background

Melvin Marvin Thomas ["Defendant" or "Thomas"] is charged with possession with intent to distribute cocaine, attempted importation of cocaine, aiding and abetting, and possession of a firearm during a drug trafficking crime. Thomas was arrested by Drug Enforcement agents ["agents"] while leaving a hotel room in Atlanta, Georgia where a suitcase containing cocaine had been dropped off earlier by co-defendant Jennifer Lynch. Upon his arrest, the agents seized a firearm and a paging device. Soon thereafter the agents obtained the numbers contained in the paging device by pressing a button on the pager.

After his arrest, Thomas was given his Miranda rights and questioned by the agents in one of the hotel rooms for about an hour. The defendant initially agreed to talk to them and did answer some of the agents' questions. At one point during the questioning, the defendant was asked whether he would cooperate in the investigation by making a telephone call to co-defendant Alan

206

Peterson while the agents listened in. One of the questioning agents, Rodman Bergstrom ["Bergstrom"], testified at the hearing that Thomas did not exactly refuse to cooperate, but rather did not make a decision at that time whether or not he was going to assist the agents.[1] Later at the customs office while he was being placed in a cell, Thomas was again requested to place a call to Peterson, and at that time he unambiguously refused.

## II. Discussion

Thomas' suppression motion is addressed first followed by a discussion on the constitutionality of the criminal statute upon which count IV of the indictment is based.

### A. Search of Paging Device

The purpose of the Fourth Amendment is to protect individuals from unreasonable searches and seizures.[2] A search can only be unreasonable if a person has a reasonable expectation of privacy in what is being searched; without an expectation of privacy the Fourth Amendment is not implicated. *Katz v. United States*, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). Requiring law enforcement officers to obtain a warrant from a neutral magistrate or judge based on probable cause is the primary method of protecting persons from unreasonable searches and seizures. *Johnson v. United States*, 333 U.S. 10, 13-14, 92 L. Ed. 436, 68 S. Ct. 367 (1948). Searches conducted without obtaining a warrant are presumptively unreasonable unless they fall within an acknowledged exception. *Katz*, 389 U.S. at 357. Judicially approved exceptions

---

[1] Bergstrom stated that "I thought at any point he was with us that a phone call was still possible. It was never a no on the phone call. He just never made a decision." (Tr. at 45.)

[2] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

> U.S. Const. amend. IV., made applicable in the Virgin Islands by § 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561 (1995). The Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995), reprinted in V.I. Code Ann., Historical Documents, 73-177 (codified as amended) (1995).

include searches conducted incident to a valid arrest, *e.g. Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969), and searches conducted under exigent circumstances, *e.g., Ker v. California*, 374 U.S. 23, 41-42, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963). Thus the retrieval of telephone numbers from Thomas' pager is a violation of the Fourth Amendment only if Thomas had a reasonable expectation of privacy in the pager, and the search falls within no acknowledged exception. We hold that the search and retrieval of the telephone numbers from his pager was justified as being incident to a valid arrest, even though Thomas had a reasonable expectation of privacy in the contents of his pager.

### 1. Expectation of Privacy in Pager

■ The testimony at the hearing indicated that something had to be done to the pager in order to retrieve numbers stored in it. The stored telephone numbers were not in plain sight of an agent just looking at the pager.[3] Moreover, the pager was being carried on Thomas' person. It was thus reasonable for the defendant to consider the telephone numbers stored in the pager to be personal and private, and to expect them generally to be free from governmental invasion. Thomas therefore had a reasonable expectation of privacy in the contents of the pager's memory.

This conclusion is supported by what appears to be the only federal cases dealing with the question of privacy expectations in a pager. *United States v. Chan*, 830 F. Supp. 531 (N.D.Cal. 1993); *United States v. Nelson Blas*, WL 265179, 1990 (E.D.Wis. 1990). In U.S. Dist. LEXIS 19961 (E.D. Wis. 1990), the court held that the "expectation of privacy in an electronic repository for personal data is ... analogous to that in a personal address book or other repository of such information." *Chan*, 830 F. Supp. at 534 In *Nelson Blas*, the defendant argued that his consent to the police officer's request to "look at" his pager was not consent to activate the pager

---

[3] The evidence adduced at the hearing indicated that the only time that a number is displayed on the paging device is when a new call comes through and the pager starts beeping. That number is displayed for a relatively short time before the display goes blank and the number is stored in memory. Agent Bergstrom testified that he never heard the pager's beeper go off. We conclude that the inculpatory number was no longer displayed in plain view for the agents to see and had to be retrieved from the pager's memory. (Tr. at 48.)

and retrieve stored telephone numbers. The court agreed that the defendant had a different expectation of privacy in the contents of the pager distinct from the outside appearance of the pager, and therefore had not consented to a search of the pager's contents. *Nelson Blas*, at *21.

## 2. Search incident to arrest

As a general rule, a search conducted incident to a lawful arrest is valid under the Fourth Amendment. The justification for such warrantless searches is the need to secure any weapons and to prevent the concealment or destruction of evidence. *Chimel v. California*, 395 U.S. 752, 763, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). The scope of the permissible search incident to an arrest has been explored in subsequent cases. *See, e.g., United States v. Chadwick*, 433 U.S. 1, 12-13, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977) (search of footlocker not valid incident to arrest); *United States v. Robinson*, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973) (search of crumpled cigarette package valid incident to arrest).

The retrieval of the telephone numbers from Thomas' pager falls either under *Chadwick* and its progeny, requiring a warrant for the searches of containers within the arrestee's immediate control, or under *Robinson* and its progeny, allowing warrantless searches of any effects found upon the arrestee's person. We find that the search of the defendant's pager falls more appropriately under the analysis of the *Robinson* line of cases, and therefore hold that the search of the pager was valid as incidental to Thomas' valid arrest.

In *Robinson*, the officer found a crumbled package of cigarettes on the defendant's person which contained heroin. The Court stated that

> [a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest required no additional justification....
>
> ....
>
> ... Having in the course of a lawful arrest come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them ....

*Robinson,* 414 U.S. at 235-36.

Relying upon the reasoning of *Robinson,* courts have held that searches of the contents of wallets and address books are also valid when incident to an arrest. *See United States v. Rodriguez,* 995 F.2d 776 (7th Cir.), *cert. denied,* 126 L. Ed. 2d 605, 114 S. Ct. 648 (1993) (search of address book was valid search incident to arrest); *United States v. Holzman,* 871 F.2d 1496 (9th Cir. 1989) *overruled on other grounds, Horton v. California,* 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990)(same); *United States v. Molinaro,* 877 F.2d 1341, 1346 (7th Cir. 1989) (search of wallet valid incident to arrest); *United States v. Richardson,* 764 F.2d 1514, 1527 (11th Cir.), *cert. denied, Crespo-Diaz v. United States,* 474 U.S. 952, 106 S. Ct. 320, 88 L. Ed. 2d 303 (1985)(same); *United States v. McEachen,* 675 F.2d 618, 622 (4th Cir. 1982)(same); *United States v. Passaro,* 624 F.2d 938, 943 (9th Cir. 1980), *cert. denied,* 449 U.S. 1113, 66 L. Ed. 2d 842, 101 S. Ct. 925 (1981)(same); *United States v. Gay,* 623 F.2d 673, 675 (10th Cir.), *cert. denied,* 449 U.S. 957, 66 L. Ed. 2d 222, 101 S. Ct. 366 (1980)(same); *United States v. Castro,* 596 F.2d 674, 677 (5th Cir.), *cert. denied,* 444 U.S. 963, 62 L. Ed. 2d 375, 100 S. Ct. 448 (1979)(same).

■■ The justification for allowing such searches is not that a person does not have an expectation of privacy in such personal effects such as a wallet or address book, but that once an arrest has been made, the privacy interests of the arrestee no longer take precedence over police interest in finding a weapon or obtaining evidence.

> While the legal arrest of a person should not destroy the privacy of his premises, it does — for at least a reasonable time and to a reasonable extent — take his own privacy out of the realm of protection from police interest in weapons, means of escape and evidence.

*United States v. Edwards,* 415 U.S. 800, 808, 809, 39 L. Ed. 2d 771, 94 S. Ct. 1234 (1974) (quotations omitted). Hence, the search of a wallet or address book does not have to take place immediately upon the arrest of the defendant. *See, e.g., id.* at 805 (warrantless search of suspect's clothes 10 hours after arrest valid.) The fact that the object is no longer at risk of being accessed by the defendant, because it is in the exclusive control of the arresting officers, is

immaterial. *See, e.g., New York v. Belton,* 453 U.S.454, 462, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (search of zippered pocket of jacket on floor of car while suspect held on the outside of car valid). Just as police can lawfully search the contents of an arrestee's wallet or address book incident to an arrest, we hold that the agents here could lawfully search the contents of Thomas' pager incident to his arrest.

■ Thomas relies on the reasoning of the Supreme Court in *Chadwick* and a court of appeals case applying Chadwick to argue that the retrieval of the telephone numbers violated the Fourth Amendment.[4] The Supreme Court held that a warrantless search of the arrestee's footlocker conducted one hour after the arrest and while the footlocker was securely in the possession of federal agents was unlawful. *Chadwick,* 433 U.S. at 15. The Court in *Chadwick* noted that the search of the footlocker was *not* a search of the "person ... justified by ... reduced expectations of privacy caused by the arrest." *Chadwick,* 433 U.S. at 16, n.10 (citing *Edwards, supra* and *Robinson, supra*). Since a search of the "person" has been held to include a person's wallet or address book, we find that a search of Thomas' pager was a search of his "person" and thus was valid.[5]

The California district court upheld the officer's retrieval of numbers stored in an arrestee's pager, distinguishing the search of the pager from the search of the footlocker in *Chadwick* by emphasizing that the search of the footlocker was remote in time

---

[4] Thomas relied on *United States v. Johnson,* 834 F.2d 1191 (5th Cir. 1987), which held that the warrantless search of a zipper-like briefcase during the arrest and interrogation of a mail carrier suspected of mail embezzlement was unlawful. However, any reliance on this case is erroneous as the opinion was withdrawn and superseded by *United States v. Johnson,* 846 F.2d 279 (5th Cir. 1988), which holds that the search of the briefcase was valid as incident to a lawful arrest. The court distinguished *Chadwick* by noting that the search of the briefcase took place immediately upon the mail carrier's arrest.

[5] The United States Court of Appeals for the Ninth Circuit, in explaining the difference between the wallet at issue in its case and the footlocker at issue in *Chadwick,* has stated that, "[u]nlike a double-locked footlocker, which is clearly separate from the person of the arrestee, the wallet found in the pocket of [the defendant] was an element of his clothing, his person, which is, for a reasonable time following a legal arrest, taken out of the realm of protection from police interest." *United States v. Passaro,* 624 F.2d 938, 944 (9th Cir. 1980). Similarly, Thomas' pager was found upon his person on his hip and thus could be characterized as part of his person for purposes of a search incident to an arrest.

and place from the arrest, while the search of the pager was only a few minutes after the arrest. *United States v. Chan*, 830 F. Supp. at 535-36. While we agree with the outcome in *Chan*, we find that the pager was personal property immediately associated with the person of arrestee Thomas, as distinguished from Chadwick's footlocker, which was "personal property not immediately associated with the person of the arrestee." *Chadwick*, 433 U.S. at 15 (emphasis added).[6]

### 3. Exigent Circumstances

The United States also argues that the search of the pager was valid because of the existence of exigent circumstances. Exigent circumstances exist when evidence is in imminent danger of destruction. *E.g., Schmerber v. California*, 384 U.S. 757, 761-77, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966)(warrantless seizure of blood sample for alcohol level valid to prevent losing evidence by dissipation of alcohol in blood). The United States contends that, because of the limited memory capability of Thomas' pager, there was a risk that the inculpatory telephone number would have been erased over time if telephone numbers were received by the pager. Evidence of this fact is Agent Bergstrom's testimony that when he first observed the inculpatory number, it was the first number stored in Thomas' pager. Later, when all the stored numbers were retrieved, the inculpatory number was the fifth number stored indicating that four new numbers were received displacing the inculpatory number. (Tr. at 46-47.) Thus, if calls leaving telephone numbers had been received which exceeded the memory capacity of the pager, the inculpatory number would have been lost. The

---

[6] This reading of *Chadwick's* holding is supported by the Supreme Court's reasoning in *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1980). There the Court rejected the lower court's holding that the search of the jacket was invalid:

> It seems to have been the theory of the Court of Appeals that the search and seizure in the present case could not have been incident to the respondent's arrest, because [the arresting officer], by the very act of searching the respondent's jacket and seizing the contents of its pocket, had gained "exclusive control" of them. But under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his "exclusive control."

*Id.* at 461, n.5.

United States also argued that there was a risk that the battery operating the pager could run down and cause the loss of the stored numbers. Thomas argues that no exigent circumstances were present because the agents "could have shut the beeper off until a warrant was obtained, or simply held it while a warrant was obtained." (Def.'s Br. Supp. Mot. Suppress at 8, n.3.)

■ The government's burden of demonstrating the legality of warrantless law enforcement activity at a suppression hearing includes the burden of establishing the existence of exigent circumstances. *See United States v. Webster,* 750 F.2d 307, 314 (5th Cir. 1984)(government bears burden of demonstrating warrantless police activity). We are unable to make an informed ruling whether exigent circumstances existed in this case, because the relevant facts which may have constituted such circumstances were not developed at the suppression hearing. For instance, we do not know the pager's storage capacity, nor do we know what impact turning off the pager might have had, *i.e.,* whether it would have been to erase the telephone numbers in the pager's memory or just have prevented new telephone numbers from being received. However, because we find that the search was a valid one incident to Thomas' arrest, we need not reach the alternate ground of exigent circumstances in order to deny Thomas' motion to suppress.

### B. *Thomas' refusal to cooperate*

The defendant argues that the government's use of his refusal to make a monitored telephone call to co-defendant Peterson in its case-in-chief would violate his Fifth Amendment right against self-incrimination and his Fourteenth Amendment right to due process. For the following reasons, we find that the government's elicitation of testimony concerning Thomas' noncooperation in not making a monitored telephone call would not constitute a violation of Thomas' constitutional rights.

Thomas correctly states the law that a defendant's post-arrest silence or his statement of a desire to remain silent may not be used either in the government's case-in-chief, nor to impeach a defendant's testimony. *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976)(the government cannot use a defendant's post-

arrest silence to impeach his testimony).[7] Unfortunately, Thomas makes no persuasive argument or authority for equating the defendant's refusal to cooperate with the government by making a phone call with such post-arrest silence or with a statement indicating a desire to remain silent.[8]

■ The testimony of Agent Bergstrom at the hearing indicates that Thomas waived his Miranda rights and voluntarily talked with the agents for an hour while in the hotel. During this time, the defendant never advised the agents that he wished to terminate the interview, nor did he ever ask for an attorney. Under these circumstances, the fact that Thomas did not make a monitored telephone call is not even an ambiguous expression of a desire to invoke his right to remain silent. Indeed, Agent Bergstrom testified that Thomas did not expressly refuse to make the telephone call but rather merely postponed making any decision, while he continued talking with the agents even after being requested to make the telephone call. This response to the agents' request is a far cry from statements such as "I ain't saying nothing,"[9] and "I'm in a lot of trouble and I want to speak to my lawyer,"[10] uttered by the defendants in the cases relied upon by Thomas. Thomas' noncooperation with the agents in making a telephone call simply does not constitute an invocation of his right to remain silent. Accordingly, the government may use testimony concerning Thomas' reaction to the agents' request to assist them in its case-in-chief.

---

[7] *E.g., United States v. Turner*, 966 F.2d 440 (8th Cir. 1992)(error to admit testimony about defendant's initial assertion of right to remain silent); *United States v. Szymaniak*, 934 F.2d 434 (2d Cir. 1991) (error to admit defendant's statement, "I'm in a lot of trouble, and I want to speak to my lawyer."); *United States v. Newman*, 943 F.2d 1155 (9th Cir. 1991)(error to allow prosecutor to elicit testimony regarding defendant's post-arrest silence); *Fields v. Leapley*, 30 F.3d 986 (8th Cir. 1994)(silence includes statement of a desire to remain silent).

[8] It is important to note that the Government does not dispute that it would be unlawful to elicit testimony concerning Thomas' refusal to answer any more questions after the interview in the hotel room had ended and when Thomas was placed in a cell at the customs office.

[9] *Fields v. Leapley*, 30 F.3d at 990.

[10] *United States v. Szymaniak*, 934 F.2d at 436.

## C. Dismissal of Count IV of Indictment

Thomas in Count IV of the indictment is charged with violating 18 U.S.C. § 924(c), which is a separate offense with an enhanced penalty for any individual who commits a violation of the federal drug laws while carrying or using a firearm, as follows:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . .

18 U.S.C. § 924(c)(1). Thomas argues that the above provision is unconstitutional because it is beyond Congress' Commerce Clause power, relying upon the recent Supreme Court decision in *United States v. Lopez*, 131 L. Ed.2d 626, 115 S. Ct. 1624 (1995). This identical argument was presented before the United States District Court for the Northern District of Georgia which found that section 924(c) was within Congress' power. *United States v. Grafton*, 1995 U.S. Dist. LEXIS 12260, No. 1:95-CR-131-FMH, 1995 WL 506001 (N.D.Ga. Aug. 15, 1995). We find the court's reasoning in *Grafton* highly persuasive and accordingly adopt it.

The Court in *Lopez* struck down the Gun-Free School Zones Act of 1990 [the "Act"], 18 U.S.C. § 922(q)(1)(A) as beyond Congress' power under the Commerce Clause. The Court explained that Congress' Commerce Clause power "includes the power to regulate those activities having a substantial relation to interstate commerce, i.e. those activities that substantially affect interstate commerce." 115 S. Ct. at 1629. The Court found the Act unconstitutional because (1) the Act "contains no jurisdictional element which would ensure ... that the firearm possession in question affects interstate commerce," *id.* at 1631, (2) that Congress failed to make any findings upon the effect that gun possession in schools has upon interstate commerce, *id.*, (3) that the connection between firearm possession in schools and the national economy was too

tangential, *id.* at 1632, and (4) that the "possession of a gun in a school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 1634.

■ The defects that caused the Court to find the Act in *Lopez* unconstitutional are not present with respect to 18 U.S.C. § 924(c). The main difference is that section 924(c) requires the violation of a predicate drug trafficking offense. In Thomas' case, he must be found guilty of one of the three drug charges in the indictment — 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) or 21 U.S.C. § 952(a). So long as the predicate drug trafficking offenses are properly within Congress' power to enact, the enhancement provision of section 924(c) is a proper extension of that power.

■ Before *Lopez*, courts unanimously upheld the constitutionality of section 924(c), because Congress has the power to regulate the predicate offense of drug trafficking. In the *Lopez* opinion by the Court of Appeals for the Fifth Circuit, which was affirmed by the Supreme Court, the court explained that

> [W]e lay to one side, as irrelevant to our inquiry [into the Constitutionality of the Gun-Free Zones Act], diverse federal legislation enhancing the penalty for use or possession of a firearm in the commission of some other federal offense. The jurisdictional basis of such legislation is obviously that applicable to the underlying federal offense, and the legislation is properly seen as a regulation of the latter. The same reasoning applies even where, as in the case of 18 U.S.C. § 924(c), the firearms provision is treated as a separate offense (rather than a mere sentence enhancement), as its jurisdictional basis is still that of the other federal offense.

*United States v. Lopez*, 2 F.3d 1342 (5th Cir. 1993), *aff'd United States v. Lopez*, 131 L. Ed. 2d 626, 115 S. Ct. 1624 (1995). *See also, e.g., United States v. Owens*, 996 F.2d 59, 61 (5th Cir. 1993)(21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 are valid exercises of Congress' Commerce power, and thus 21 U.S.C. § 924(c) is also valid); *United States v. Weinrich*, 586 F.2d 481, 489 (5th Cir. 1978)(same); *United States v. Dumas*, 934 F.2d 1387 (6th Cir. 1990), *cert. denied* , 502 U.S. 1006, 112 S. Ct. 641, 116 L. Ed. 2d 658 (1991)(same); *United States v. McMillian*,

535 F.2d 1035, 1037 n.1 (8th Cir. 1976)(same). *Lopez* does not undermine these holdings, because the regulation of drug trafficking remains a valid exercise of congressional power. *See United States v. Gonzalez*, 893 F. Supp. 935 (S.D.Cal. 1995)(§ 841(a)(1) is Constitutional under Commerce Clause); *United States v. Bramble*, 894 F. Supp. 1384 (D.Haw. 1995)(same). Because drug trafficking substantially affects interstate commerce, and section 924(c) requires a violation of a drug trafficking law, section 924(c) also has a sufficient nexus with interstate commerce and is therefore constitutional.

### III. Conclusion

For the foregoing reasons, Thomas' motion to dismiss Count IV of the indictment is denied and his motion to suppress is denied. An appropriate order to that effect is appended.

### ORDER

For the reasons given in the accompanying memorandum, it is hereby

ORDERED that defendant Thomas' motion to dismiss count IV of the indictment is DENIED, and it is further

ORDERED that defendant Thomas' motion to suppress use by the government in its case-in-chief of 1) telephone numbers retrieved from Thomas' pager device, and 2) defendant's refusal to cooperate with law enforcement officers by making a telephone call to co-defendant Alan Peterson is DENIED.