UNITED STATES of America,
Plaintiff,

v.

Joshua VANEENWYK, Defendant.

No. 01–CR–6075L.

United States District Court,
W.D. New York.

May 28, 2002.

Everardo A. Rodriguez, U.S. Attorney Office, Rochester, NY, for Plaintiff.

Robert G. Smith, Federal Public Defender, Rochester, NY, Peter J. Pullano, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Magistrate Judge William G. Bauer issued a Report and Recommendation on March 28, 2002 (Dkt. # 19), recommending, *inter alia,* that the Court grant the motion by defendant, Joshua Vaneenwyk, to suppress a cellular telephone and day planner book, as well as the telephone numbers and other information obtained from them. The Government has timely filed an objection to a portion of the Report and Recommendation (Dkt. # 21). The Government states that it objects only to that part of the Report and Recommendation recommending suppression of the day planner, and is not objecting with respect to suppression of the cellular telephone.

Such an appeal requires the Court to examine the matter, *de novo,* and make a separate determination of the Fourth Amendment issues involved. Based on the evidence submitted at the suppression hearing, I believe that the motion to suppress should be denied.

## FACTUAL BACKGROUND

The pertinent facts are largely undisputed. On August 9, 2001, Special Agent Jeffrey Gelina of the United States Drug Enforcement Administration, Officer Donald Kenny of the Town of Greece Police Department, and Officer Paul Adriaansen of the Town of Webster Police Department (collectively "the officers") were involved in the execution of an arrest warrant issued for defendant at defendant's residence in Sodus, New York. After placing defendant under arrest, the officers read him his rights and explained to defendant

that they were interested in obtaining his cooperation. Defendant agreed to discuss the matter with them at a nearby police station. Suppression Hearing Transcript ("Tr.") at 7–10.

The officers decided that they would let defendant drive his own vehicle, a pickup truck, to the police station. Agent Gelina and Officer Adriaansen performed a protective sweep of the truck before allowing defendant to get inside. Officer Adriaansen testified that before conducting the sweep search, he asked defendant if it was okay if Adriaansen looked in the truck, and defendant gave an affirmative response. Tr. at 65.

When the officers looked inside defendant's truck, they found a day planner or address book. Agent Gelina asked defendant if he could "hold on to it," and defendant indicated that he could. Tr. 20, 43, 66.

The officers and defendant then proceeded to the police station, where Officer Adriaansen, apparently at Agent Gelina's direction or with his approval or agreement, made a photocopy of the contents of the day planner. Tr. at 22, 69–70. There is no evidence, and the Government does not assert, that defendant expressly consented to the officers examining the contents of the day planner or copying it.

## DISCUSSION

█ In his Report and Recommendation, Magistrate Judge Bauer found that defendant gave the officers permission to hold onto the day planner, but that "this limited consent did not authorize Adriaansen to photocopy the day planner...." Report and Recommendation at 13. In my view, however, defendant's general, unqualified consent to a search of his vehicle necessarily extended to a search of the day planner which was found inside that vehicle. I also believe that by consenting to

the officers "holding on" to the day planner, defendant implicitly consented to the officers examining the day planner as well. In addition, since the officers could lawfully examine the contents of the day planner, they were also entitled to make a photocopy of those contents.

In *United States v. Snow,* 44 F.3d 133, 135 (2d Cir.1995), the Court of Appeals for the Second Circuit held that "an individual who consents to a search of his car should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined." In reaching that conclusion, the court reasoned that "[i]f the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way." *Id.*

Based on this same reasoning, I conclude that since defendant gave the officers a general consent to search his vehicle, he should reasonably have expected that they might look inside the day planner book, which is analogous to a closed container, that they found in the vehicle. *Cf. United States v. Galante,* No. 94 Cr. 633, 1995 WL 507249, *3 (S.D.N.Y. Aug.25, 1995) (consent of car owner to search of car included consent to search information stored in cellular telephone and beeper found in car, to the extent that they could be considered "closed containers" within the car) (citing *Snow,* 44 F.3d at 135).

█ Since the search of defendant's truck was also contemporaneous with defendant's arrest pursuant to a warrant, I also believe that the seizure and subsequent examination of the day planner can be justified as part of a search incident to arrest. This exception to the search warrant requirement permits police to search "the area into which an arrestee might reach in order to grab a weapon or evidentiary items...." *Chimel v. California,* 395

U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). At the time of an arrest, then, the police may search "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.*

▇ In the case at bar, defendant, who had just been arrested, was going to be allowed to enter his truck to drive it to the police station. Under these circumstances, then, the officers were certainly justified in searching the interior of the truck cab for weapons or evidence. *Id.*

▇ It is also clear that an object such as a day planner, address book or the like is subject to seizure as part of such a search incident to arrest. *See, e.g., United States v. Rodriguez,* 995 F.2d 776, 778 (7th Cir.) (address book was lawfully seized from defendant's person as part of search incident to arrest), *cert. denied,* 510 U.S. 1029, 114 S.Ct. 648, 126 L.Ed.2d 605 (1993); *United States v. Holzman,* 871 F.2d 1496, 1504–05 (9th Cir.1989) (arresting officer legitimately examined address book discovered during search incident to arrest and determined that it contained "a bunch of names and numbers," and subsequent, more thorough search of book's contents was also valid), *overruled on other grounds, Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "The justification for allowing such searches is not that a person does not have an expectation of privacy in such personal effects such as a wallet or address book, but that once an arrest has been made, the privacy interests of the arrestee no longer take precedence over police interest in finding a weapon or obtaining evidence." *United States v. Lynch,* 908 F.Supp. 284, 288 (D.Vi.1995). As stated by the Supreme Court, "[w]hile the legal arrest of a person should not

destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape and *evidence." United States v. Edwards,* 415 U.S. 800, 808, 809, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (quotations omitted) (emphasis added).

▇ Furthermore, "the search of a wallet or address book does not have to take place immediately upon the arrest of the defendant. The fact that the object is no longer at risk of being accessed by the defendant, because it is in the exclusive control of the arresting officers, is immaterial." *Lynch,* 908 F.Supp. at 288 (citing *Edwards,* 415 U.S. at 805, 94 S.Ct. 1234 (warrantless search of suspect's clothes 10 hours after arrest held valid), and *New York v. Belton,* 453 U.S. 454, 462, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (upholding search of zippered pocket of jacket on floor of car while suspect held on the outside of car)). Defendant had no more reasonable expectation of privacy in the day planner at the police station following his arrest than he did at the time of its initial seizure by the officers when they searched the inside of his truck. *See Holzman,* 871 F.2d at 1505 ("there is no continued expectation of privacy if it has been effectively destroyed by a valid search incident to arrest").

Furthermore, when the officers asked if they could "hold on to" the day planner, it would not have been reasonable for defendant to believe that they would not look inside it or read its contents. There would have been little other reason for them to want the day planner if they did not intend to look inside it. This was not a weapon, which the officers would obviously take possession of for their own safety; it was not drugs or other contraband, which defendant could not lawfully possess in the

first place. Nor was this a situation in which defendant was carrying or holding a large, heavy or unwieldy object, such as a shopping bag, which the officers offered to hold on to temporarily as a courtesy while defendant was at the police station. The officers could easily have left the day planner in defendant's pickup truck. When they asked if they could "hold on to" the day planner, it would have been reasonable to assume that they believed that it might have had some evidentiary value, and that their reasons for wanting to hold on to it were both to prevent defendant from accessing or destroying it, and also to look at the day planner and see what information it contained.[1]

■ The fact that the officers later photocopied the day planner is of no moment. Having already legitimately looked through the contents of the book, the officers' copying of it simply preserved what they had already lawfully seen. *See Rodriguez*, 995 F.2d at 778 (where address book had been lawfully seized from defendant during search incident to arrest, "photocopying the contents of the address book was within the permissible scope of the search as an attempt to preserve evidence"); *Fortna*, 796 F.2d at 738 (where initial examination of documents was clearly proper, photocopying of those documents "merely memorialized the agents' observations and provided a means to verify any subsequent recounting of them") (citing *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971));

accord *United States v. Bin Laden*, 98 CR 1023, 2001 WL 30061, *4 (S.D.N.Y. Jan.2, 2001); *United States v. Soto–Teran*, 44 F.Supp.2d 185, 191 (E.D.N.Y.1996).

## CONCLUSION

The Government's objections to the Report and Recommendation filed March 28, 2002 are sustained, and I reject the recommendation of the Magistrate Judge in the Report and Recommendation that the defendant's day planner and information obtained therefrom be suppressed. Defendant's motion to suppress the day planner and its contents (Dkt. # 11) is denied.

In all other respects, the Report and Recommendation is adopted, and defendant's motion to suppress his cellular telephone and information obtained therefrom (Dkt. # 11) is granted. Defendant's motion for a bill of particulars and disclosure of the identity of a confidential informant (Dkt. # 11) is denied.

IT IS SO ORDERED.

---

1. Seizure of the day planner may also have been permissible pursuant to the plain-view exception to the warrant requirement. *See United States v. Diecidue*, 603 F.2d 535, 559 (5th Cir.1979) (seizure of address books spotted during sweep of defendant's residence to search for other persons at time of defendant's arrest was justified under plain view doctrine, since officer recognized that address books might contain information concerning coconspirators); *U.S. v. Benitez–Melendez*, No. 91 Cr. 298, 1991 WL 158962, *1, *4 (S.D.N.Y. Aug.15, 1991) (even if defendant consented to a search only for narcotics, once officers were properly on premises and saw defendant's address book, they could lawfully seize it once defendant conceded it was his; officer "was entitled to conclude that the address book probably contained names of one or more of Gonzalez's confederates, known or unknown. He therefore had probable cause to seize the book").