**MARIA CONCEPCION, INDIVIDUALLY AND ON BEHALF OF HER CHILDREN RAQUEL CONCEPCION, JENNIFER CONCEPCION, BRENDA CONCEPCION, DIANA CONCEPCION and BETHA ABRIEU, Plaintiffs**

**v.**

**VIRGIN ISLANDS HOUSING AUTHORITY And GOVERNMENT OF THE VIRGIN ISLANDS, Defendants**

Civil No. 516/1998

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

June 28, 2005

*For Plaintiffs:* ARCHIE JENNINGS, ESQUIRE, St. Thomas, V.I.

*For The Virgin Islands Housing Authority:* RHONDA HOSPEDALES, ESQUIRE, The Bornn Firm, Christiansted, St. Croix, Virgin Islands

*For the Government of the Virgin Islands:* WAYNE ANDERSON, ESQUIRE, Assistant Attorney General, Department of Justice, St. Thomas, V.I.,

SWAN, *Judge*

## MEMORANDUM OPINION

(June 28, 2005)

Before the Court is Defendant Virgin Islands Housing Authority's ("VIHA" or "Defendant") Motion for Partial Summary Judgment pursuant to the Federal Rules of Civil Procedure Rule 56. Defendant's motion is in opposition to Plaintiff Maria Concepcion's demand for punitive damages against VIHA both individually and on behalf of her children, Raquel Concepcion, Jennifer Concepcion, Brenda Concepcion, Diana Concepcion, and Bethal Abrieu's ("Plaintiffs"). For the following reasons, VIHA's Motion for Partial Summary Judgment will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are residents of Parcel 148-61, Estate Annas Retreat, on St. Thomas, Virgin Islands. On or about July 10, 1996, an incident occurred at the Tutu Hi-Rise Housing Project, which is located in proximity to, but uphill from Plaintiffs' residence. The main underground sewer line or lines which service the Tutu Housing Project malfunctioned, discharging enormous quantities of raw sewage and noxious fumes and gas onto and over Plaintiffs' property and into their residence, damaging furniture and clothes, as well as physically affecting them. Plaintiffs likewise suffered extensive property damage, causing them to discard all their belongings. Plaintiffs also suffered physical discomfort, excruciating pain, and mental anguish when their skins erupted with rashes, prompting them to seek medical treatment at the local hospital.

On July 6, 1998, Plaintiffs filed this case seeking damages against the Government of the Virgin Islands ("Government") and VIHA. In the complaint, Plaintiffs assert that VIHA, which owns and operates the Tutu Hi-Rise Housing Project, is responsible for the design, construction and maintenance of the buildings comprising the Tutu Housing Project. Plaintiffs further assert that the Government either alone or in conjunction with VIHA is responsible for the design construction, installation and maintenance of the underground sewer lines, which service the Tutu Hi-Rise Housing Project. Plaintiffs also assert that Defendants caused the sewer lines to be constructed and installed on, near, under and through Plaintiffs' property without legal right or authority to do so, constituting a trespass upon Plaintiffs' property. Lastly, Plaintiffs allege that the malfunctioning of the sewer lines was solely and proximately caused by Defendants' negligence. Consequently, Plaintiffs seek compensatory and punitive damages from Defendants for their personal injuries and property losses. On June 25, 2002, Defendant VIHA filed a motion for partial summary judgment, asserting that VIHA cannot be liable for punitive damages, because public and/or municipal corporations are immune from punitive damages.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper,

> ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

FED. R. CIV. P. 56(c). Rule 56(d) allows the court to "make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy". FED. R. CIV. P. 56(d). Therefore, the court may enter partial summary judgment on an issue where there is no proof to support liability and on issues of certain categories of damages. In resolving a motion for partial summary judgment, the court will apply the same

standards used for evaluating a motion for summary judgment. *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). However, a partial summary judgment does not become a final order until the court enters a judgment disposing of the entire case. *Selkridge v. United Omaha Life Ins. Co.*, 360 F.3d 155, 161, 45 V.I. 712 (3d Cir. 2004). In considering a motion for summary judgment the court must draw all reasonable inferences, resolving all doubts against the moving party and looking at the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Hunt v. Cromartie*, 526 U.S. 541, 550-555, 110 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999). The moving party has the initial burden of showing that there is no "genuine" issue of material fact to support the nonmoving party's claims. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the moving party has met its burden, the nonmoving party must then demonstrate to the Court that there are facts in dispute that are essential to determining the outcome of the issues being litigated.[1] *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358 (3d Cir. 1992). Lastly, summary judgment is to be rendered when one party is unable to show a genuine issue as to a material fact on which that party will bear the burden of proof at trial so long as judgment against that party is appropriate as a matter of law. *Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 327, 119 S. Ct. 765, 772, 142 L. Ed. 2d 797 (1999).

## III. DISCUSSION

In its Motion for Partial Summary Judgment, VIHA asserts that it cannot be held liable for punitive damages, because it is a public corporation and instrumentality of the Government. Therefore, it is immune from punitive damages. Specifically, VIHA asserts that the law and public policy considerations preclude Plaintiffs from recovering punitive damages against VIHA.

Plaintiffs filed an opposition to the motion for Partial Summary Judgment, contending that a pivotal issue in this case is whether VIHA is

---

[1] "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

an "arm" or "alter ego" of the Virgin Islands Government, thereby entitling it to Eleventh Amendment sovereign immunity. Plaintiffs further assert that VIHA is a separate and distinct entity from the Government; therefore, it is not exempt from punitive damages. Plaintiffs remind the Court that from its inception VIHA was intended to be a legal entity, separate from the Government, having its own debt and obligations, and the power to sue or be sued in its own corporate name. Consequently, VIHA is not entitled to sovereign immunity consideration.

In its reply, VIHA argues that Plaintiffs' reliance on the issue of sovereign immunity is severely misplaced, because VIHA has not attempted to shield itself from total liability on the pretext or presumption that it enjoys sovereign immunity. Rather, VIHA seeks only to preclude an award of punitive damages against it. More succinctly, VIHA's motion does not involve a claim under the Eleventh Amendment; it involves, however, its opposition to a claim for punitive damages against an independent governmental instrumentality. Therefore, the determinative issue is whether VIHA, as an independent governmental instrumentality that is statutorily mandated to provide low-rent dwelling accommodation and not to operate such housing for profit, is immune from claims for punitive damages. The Court agrees with VIHA.

██ "Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and [to] deter him and others like him from similar conduct in the future." RESTATEMENT (SECOND) OF TORTS § 908(1) (1979). Generally, punitive damages are not allowed against a municipality unless expressly authorized by statute. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, 101 S. Ct. 2748, 2756, 69 L. Ed. 2d 616 (1980). In *City of Newport*, the Supreme Court enunciated a "two-part approach" for "scrutinizing a claim of immunity proffered by a municipality." *Id.* at 259. Such a claim requires "careful inquiry into considerations of both history and policy" to determine "both the policies that [the immunity] serves and its compatibility with the purposes" of statutes. *Id.*

██ Considering the Supreme Court's analysis in *City of Newport,* this Court must examine the purpose for municipal immunity from punitive damages. Punitive damages imposed on a municipality does not penalize the municipality or serve as a deterrent but instead punish the community

116

whose members may have to pay higher taxes and excessive fees for services, in order to secure funds to pay punitive damages. Additionally, immunity from punitive damages protects the public from unjust punishment and the municipality from undue financial exposure. *Id.* 453 U.S. at 263. Furthermore, punitive damages are not intended to compensate the injured party, but to punish the wrongdoer for malicious, outrageous or intentional conduct and to deter others from similar extreme conduct. *Id.* at 266. However, this goal will not be accomplished or realized when an award of punitive damages is made against public corporations or instrumentalities that are created by the government to serve the needs of the public or the community. Consequently, punitive damages against public corporations and instrumentalities would be an unreasonable financial burden on innocent taxpayers and residents of the affected community.

Nonetheless, Plaintiffs argue that punitive damages should be assessed against VIHA for the following reasons: (1) VIHA is an independent entity separate from the Government; (2) VIHA does not have to rely on the Government's general fund for operations, and that any judgment rendered against it could be satisfied only from funds of VIHA; and (3) VIHA has the ability to raise revenue by raising fares, leasing property, and leasing the use of its facilities. However, Plaintiffs' arguments are specious, because they ignored some salient and operative facts about VIHA. While any judgment against VIHA would be satisfied from the agency's funds, VIHA was expressly created as a non-profit entity when its enabling statute mandates that it "shall not operate such housing for profit"; therefore, an award of punitive damages against VIHA would indirectly harm the Virgin Islands Community VIHA was created to serve. 29 V.I.C. § 61 (1996). VIHA's enabling statute provides:

> It is declared to be the policy of the Virgin Islands that the Authority shall manage and operate housing projects established for low-income families in the most economical and efficient manner consistent with applicable requirements, so as to enable it to fix rentals or charges for dwelling accommodations at low rents, in consonance with the purpose of providing safe, decent, and sanitary housing for families of low income, and shall not operate such housing for profit or as a source of revenue to the Government of

117

the United States Virgin Islands or any division or subdivision thereof. To this end, the Authority shall fix the rentals or charges for dwellings in such housing projects at rates no higher than those it shall determine to be necessary to produce revenues which, together with all other available moneys, revenues, incomes, and receipts of the Authority, from all sources, including Federal financial assistance provided to maintain the low-rent character of the housing projects, will be sufficient to:

(1) pay, as they become due, the principal and interest on bonds and obligations of the Authority;

(2) establish and maintain such reserves as may be required to assure the payment of such principal and interest, as they become due;

(3) meet the cost of, and to provide for, the maintenance and operation of the housing projects, including necessary reserves therefore, and for costs of insurance protection, as well as the administrative expenses for the Authority; and

(4) make payments in lieu of taxes as provided for in this chapter.

Rentals and charges for dwellings shall be established, and the housing projects shall be administered, to the greatest degree possible, so as to assure that any Federal financial assistance required shall be in the minimum amounts and periods necessary to maintain the low-rent character of the projects. (Emphasis added)

29 V.I.C. § 61 (1996) (emphasis added). The above unambiguous language consigned VIHA to a non-profit operation and precludes it from operating as a source of revenue to the Government of the Virgin Islands or any of its divisions or subdivisions. Importantly, VIHA's specific mandate is to provide a social and governmental service by making available low-income dwelling for the people of the community.[2]

The United States Third Circuit Court of Appeals in *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346 (3d Cir. 2001), emphasized the importance of these public policy considerations and

---

[2] *See* 29 V.I.C. § 1 which provides the "Declaration of findings and policy" for creating VIHA.

firmly decried an award of punitive damages against governmental instrumentalities that exclusively provide social and community services. The Court reasoned in that case that, "[a]lthough taxes would not be affected by the award of punitive damages against the Port Authority because it receives no tax revenues and is financially independent of New York and New Jersey, an award of punitive damages might result in increased tolls, fares, and other expenses borne by the public generally." *Id.* at 357. Likewise, an award of punitive damages against VIHA can deplete the agency's funds, resulting in less affordable housing available for the low-income families in the Virgin Islands, as well as less money available for maintenance expenses of these housing projects. More succinctly, an award of punitive damages defeats, impedes and obstructs the statutorily mandated objectives of VIHA. The Restatements of Law emphasize that a damage award is distinguished by its purpose, and "[o]nly those damages will be awarded that tend to carry out ... these purposes." RESTATEMENT (SECOND) OF TORTS § 901 cmt. a. (1979). The Court finds that the purpose punitive damages are incongruous with the statutory purpose and objectives of VIHA.

Additionally, VIHA is severely limited in its ability to raise revenues, which is inconsistent with Plaintiffs' suggestions and arguments. VIHA's statutory mandate and Federal Laws and Regulations require that the VIHA set fixed charges for rent that is no greater than necessary to maintain the housing and pay all its obligations. Title 29 § 61 provides in pertinent part: "the Authority shall fix the rentals or charges for dwelling in such housing projects at rates no higher than those it shall determine to be necessary to produce revenues which, together with all other available moneys, revenues, incomes, and receipts of the Authority, from all sources, including Federal financial assistance provided to maintain the low-rent character of the housing projects, will be sufficient to ... pay ... the principal interest on bonds and obligations of the Authority ...". 29 V.I. CODE § 61 (1996).

A review of VIHA's enabling statute demonstrates and confirms that the purpose of VIHA is compatible with the public policy, rejecting punitive damage awards against municipalities and governmental instrumentalities. The Virgin Islands Housing Authority was created in 1950 pursuant to 29 V.I. CODE § 31(a) as a "public body corporate and politic of the Virgin Islands" and was formed to constitute a "public housing agency". As a public agency, VIHA is a government

119

instrumentality, even though it is considered an autonomous corporation.[3] The mandate of VIHA, as enumerated in 29 V.I. CODE § 1(i), is to provide "safe, decent, and sanitary dwellings for low-income families" in the Virgin Islands. 29 V.I. CODE § 1(i) (1996). VIHA's revenues are derived from the rents collected from public housing tenants and from Federal and local government appropriations and grants. Importantly, VIHA is mandated not to operate as a business for profit, while simultaneously providing low-income public dwellings, thereby confirming its governmental and social services mandate and purpose. In enacting Title 29 V.I.C. § 35, the Virgin Islands Legislature gave VIHA "all the powers necessary and convenient" to "carry out and perform" its purposes including the power to "sue and be sued".[4] 29 V.I.C. § 35 (1996).

Since the Supreme Court's ruling in *Newport*, courts in many jurisdictions have extended the rule and have held that punitive damages may not be recovered against governmental entities such as municipal corporations, public utilities, and other government instrumentalities. *Morris v. Lindau*, 196 F.3d 102 (2d Cir. 1999); *Clements v. Airport Authority of Washoe County*, 69 F.3d 321 (9th Cir. 1995). This rule has

---

[3] The Legislature of the Virgin Islands in enacting Title 29 V.I. CODE § 35, gave VIHA autonomy with the authority to have perpetual existence as a corporation; to borrow money; acquire property by any lawful means; own, hold, improve, clear or prepare for redevelopment any such property; and the power to sell, lease, exchange, transfer, assign, mortgage, pledge, or other wise dispose of such property.

[4] 29 V.I.C. 35 provides in pertinent part: "The Authority shall have all the powers necessary and convenient to carry out and perform the purposes and provisions of this chapter (except the power to levy and collect taxes or special assessments), including the following powers in addition to other powers granted in this chapter, and may - (1) have perpetual succession; (2) sue and be sued; (3) have a seal and modify it; (4) enter into and execute contracts and instruments of every kind and nature, necessary or convenient to the exercise of its powers and functions; (5) make, and from time to time modify, and repeal, bylaws, rules and regulations, not inconsistent with this chapter, providing for the internal organization and management of the Authority, for the administration of its affairs and operations, and for carrying into effect the powers and purposes of the Authority; (6) borrow money from public and private sources, and give such security therefor as may be required; (7) apply for and accept advances, loans, grants, contributions, gifts, donations, appropriations of funds and any other form of financial assistance from the Federal Government, the Government of the United States Virgin Islands, or other public body or agency, or from any sources, public or private, for the purposes of this chapter, and enter into and carry out contracts in connection therewith ..."

also been applied to a Virgin Islands public utility, which is an independent governmental instrumentality. In *Powell v. Virgin Islands Water and Power Authority*, 20 V.I. 579, 582 (D.V.I. 1984), the District Court held that punitive damages cannot be assessed against the Virgin Islands Water and Power Authority ("WAPA"), an autonomous public utility, because the people in the community would bear the cost of an excessive damage award through higher rates for water and electricity. Like VIHA, WAPA was created to serve the needs of the public. Pursuant to Title 30 Chapter 5 of the Virgin Islands Code, WAPA was established as an autonomous governmental instrumentality for the purpose of supplying adequate water and electrical power to the people of the United States Virgin Islands. 30 V.I.C. § 103(a) (1998).

Significantly, the Virgin Islands Port Authority, a similarly situated entity much like VIHA, and established as a "body corporate and politic constituting a public corporation and autonomous governmental instrumentality" for the Government of the Virgin Islands, is immune from punitive damage awards. 29 V.I.C. § 541 (1996). Relying on its holding in *Powell*, the District Court in *Codrington v. The Virgin Islands Port Authority*, 911 F. Supp. 907, 912-913, 33 V.I. 215, 33 V.I. 245 (1996), held that punitive damages awarded against the Virgin Islands Port Authority, although an independent instrumentality, would be a cost borne by the public and therefore cannot be allowed. The United States Third Circuit Court of Appeals in *Bolden v. Southeastern Pennsylvania Transport Authority*, 953 F.2d 807 (3d Cir. 1991), held that the transit authority created by the Commonwealth of Pennsylvania, could not be assessed punitive damages. In a more recent case, the United States Third Circuit Court of Appeals concluded that the Port Authority of New York and New Jersey "as a hybrid entity with substantial connections to government", is immune from punitive damages. *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346 (3d Cir. 2001) (quoting *King v. Port Authority of New York and New Jersey*, 909 F. Supp. 938 (D.N.J. 1995), *aff'd*, 106 F.3d 385 (3d Cir. 1996)). Thus, a legitimate public policy is the primary reason that courts disapprove of punitive damage awards against municipalities, public corporations, and other governmental entities. *Newport*, 453 U.S. at 263. Moreover, an award of punitive damages against VIHA will have a debilitating affect on the financial ability of VIHA to comply with its statutory mandate.

■ Therefore, the Court concludes that despite being an independent entity, VIHA, like the Virgin Islands Port Authority and Water and Power Authority, is a government instrumentality serving the needs of the community and is not subject to punitive damage awards. *See Codrington*, 911 F. Supp. 907, 33 V.I. 215, 33 V.I. 245; *Powell*, 20 V.I. 579.

Significantly, Plaintiffs will not be without a remedy, if Defendants are found liable. Compensatory damages, which are designed to restore the injured person or persons to the same or similar position they were in before the tort was committed, are available to Plaintiffs. RESTATEMENT (SECOND) OF TORTS § 903 (1979). Importantly, compensatory damages are not just limited to out of pocket expenses that Plaintiffs may have incurred because of their injury but also include damages for pain and humiliation. RESTATEMENT (SECOND) OF TORTS § 903 cmt. a. (1979).

## IV. CONCLUSION

It is a well settled legal principles that public corporations and government instrumentalities cannot be assessed punitive damages. As a matter of public policy, punitive damage awards are considered to be more harmful to the public than as punishment to the offending government agency. The primary goal of tort claims is to compensate the plaintiff for any injury caused by the defendant. Since Plaintiffs will have the opportunity to be fully compensated if they prevail on their claims, it is unnecessary to punish the innocent people of the Virgin Islands and make them suffer for the alleged actions of the Virgin Islands Housing Authority. For the foregoing reasons, the Court holds that VIHA, a non-profit and independent government instrumentality expressly established to provide low-income public housing, and statutorily mandated not to operate for a profit, is immune from claims of punitive damages. Accordingly, Plaintiffs' claim for punitive damages against VIHA will be dismissed, and Defendant's Motion for Partial Summary Judgment is granted. An appropriate Order will follow.